UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

RANDY DISSELKOEN PROPERTIES, LLC,
        Plaintiff,

and

CBS OUTDOOR, INC.
        Intervening Plaintiff,

                                                    Case No. 1:06-cv-141

-v-                                                 HONORABLE PAUL L. MALONEY

CHARTER TOWNSHIP OF CASCADE,
        Defendant/Third-Party Plaintiff,

-v-

W&K BARNETT FAMILY TRUST and
THE WILLIAM AND KATHLEEN BARNETT
FAMILY LIMITED PARTNERSHIP,
        Third-Party Defendants,

and

THE WILLIAM AND KATHLEEN BARNETT
FAMILY LIMITED PARTNERSHIP, a Michigan
limited partnership,
        Third-Party Defendant/Third-Party Plaintiff

-v-

STOR-U-OWN, LLC, a Michigan limited
liability company, and RANDY DISSELKOEN
PROPERTIES, LLC, a Michigan limited
liability company,
        Third-Party Defendants.


OPINION AND ORDER DENYING PLAINTIFFS' MOTION FOR PARTIAL SUMMARY JUDGMENT
AND GRANTING IN PART AND DENYING IN PART DEFENDANT'S CROSS MOTION FOR
SUMMARY JUDGMENT

        This Court has before it Plaintiff Randy Disselkoen Properties, LLC and Intervening Plaintiff CBS Outdoor

Inc.'s Motion for Partial Summary Judgment (Dkt. No. 53) and Defendant/Third-Party Plaintiff Charter Township

of Cascade's Cross Motion for Summary Judgment (Dkt. No. 59). The parties have filed responses and replies. Oral

argument on the cross motions was held on November 20, 2007.

I. BACKGROUND

The dispute revolves around a billboard. The dispute is unfortunately complicated by the number of legal entities involved. The billboard was erected in 1977 by Eller Outdoor Advertising. (Exhibit P - Application to Erect Sign).[1] At the same time, Eller Outdoor also entered into a ten year lease with C.T. Beall for ground space and air rights necessary to erect and maintain a billboard.[2] (Dkt. No. 72 - Eller lease 1977). In 1980, William Barnett and his wife Kathleen Barnett acquired the property on which the billboard is located.[3] On November 24, 1991, the Barnetts executed a quit claim deed transferring the property to the William and Kathleen Barnett Family, Limited Partnership (Limited Partnership). (Exhibit 4). The quit claim deed contains explicit language excluding from the sale any signs on the property.[4] (Id.). On December 6, 1991, Gannett Outdoor entered into a fifteen year billboard lease with William Barnett individually.[5]

_____

[1] Conveniently, Plaintiffs' exhibits are marked by letters while Defendant's exhibits are marked by numbers.

[2] Although neither document establishes that Eller Outdoor actually built and owned the billboard, the effectively unrebutted inference of construction and ownership does follow from the documents.

[3] Mr. Barnett alleges in his deposition that he and a partner purchased the property in the late 1970s and that he later bought the partner out. (Exhibit A and Exhibit 2 - W. Barnett Second Deposition, p. 5-9). Defendant submits a warranty deed showing William and Kathleen Barnett entered into a land contract with Virginia and Denise Beall on October 6, 1980 to purchase the property. (Exhibit 3). The warranty deed transferring the property was executed on November 6, 1987. (Id.). In addition, in a letter dated July 13, 1982, William Barnett and Virginia Beall sent a letter to the lessee (owner) requesting that rent checks be sent to Mr. Barnett rather than to the Bealls as Mr. Barnett had entered into a purchase agreement for the property in 1980. (Dkt. No. 72 - letter).

[4] The deed states "HOWEVER, any Signs on the property shall remain the property of the Parties of the First Part [William G. Barnett and his wife, Kathleen R. Barnett] including any revenue therefrom and any responsibility therefor." (Exhibit 4). When the Barnetts purchased the property, there were two signs located on it. The parties dispute ownership of the sign involved in this dispute. Although not relevant to this action, Mr. Barnett alleges he assumed ownership of the other sign when they purchased the property. (Exhibit A and Exhibit 2, p. 11). Mr. Barnett denies that he acquired the sign involved in this dispute when he purchased the land. (Id.).

[5] The lease gives Gannett Outdoor ground space and service access to the existing sign structure. Mr. Barnett did not sign the lease in any official capacity, even though he transferred the property to the Limited Partnership only two months earlier. Apparently Mr. Barnett also received the rent checks in his individual capacity rather than on behalf of the Limited Partnership. See Exhibit A and Exhibit 2, p. 16

2

When the Barnetts purchased the property, there was a single large building on it.  The Barnetts decided to turn the property into a mini-storage business and in 1985 sought and received approval from Defendant Township to construct seven additional buildings on the property.  Five of the seven buildings were constructed.  In 1997, Defendant Township enacted a new sign ordinance.  (Exhibit E and Exhibit 9).  In 1999, the Barnetts wanted to construct the two additional buildings that had been approved in the site plan and submitted a site plan review to the Township.  (Exhibit 7).  The Barnetts were told they needed to request a variance from the newly enacted sign ordinance because the sign had become a legal nonconforming use.[6]  An attorney for the Barnetts prepared a variance application and submitted it to the Township's Zoning Board of Appeals on behalf of the W&K Barnett Family Trust (Family Trust).[7]  (Exhibit G and Exhibit 10).  The Application identified Gannett Outdoor of Michigan as having a legal or equitable interest in the property.  (*Id.*).  The Application includes an attachment which states that Gannett Outdoor owns the billboard, but that petitioner would be "willing to condition any variance granted by agreeing not to renew the existing lease with Gannett Outdoor Co. of Michigan when it expires on May 15, 2006."  (*Id.*).

A hearing regarding the variance was held before the Cascade Charter Township Zoning Board of Appeals (ZBA) on April 13, 1999.  (Exhibit H and Exhibit 14).  On April 6, 1999, the ZBA published a Notice of Hearing

---

[6]The billboard is located in an industrial zone and is nonconforming two ways.  First, it is larger than the ordinance allows (size).  Under § 6.04(e) of the ordinance, a billboard may not exceed 300 square feet of sign area.  (Exhibit D).  This billboard has about 600 square feet of sign area.  (Exhibit 11 - Staff Report).  Second, the billboard is closer to other signs in the area than the ordinance allows (spacing).  Under § 6.04(d) billboards must be separated by at least 2000 feet.  (Exhibit D).  The billboard in this dispute is situated 584 feet from another billboard on the same side of the highway and less than 2000 feet from a billboard located on the other side of the highway.  (Exhibit 11).

[7]It is unclear why the Family Trust was identified as the owner of the property.  In May 1996, the Limited Partnership was amended, dropping William Barnett and Kathleen Barnett as general partners and adding the William G. Barnett Trust as a general partner.  (Exhibit 19).  The certificate of amendment, in the space provided for a general description of the amendments made, states "The General Partners [sic] interest are transfered [sic] to a Trust."  When asked why the Family Trust was named in the Application, Mr. Barnett stated it was "because that was our business" and clarified that the Trust was the owner of the property.  (Exhibit 1 - W. Barnett First Deposition, p. 16).

In answer to the third party complaint filed by Defendant Township, the third party Defendants W&K Barnett Family Trust and the William and Kathleen Barnett Family Limited Partnership deny that any entity known as the Family Trust ever existed.  (Dkt. No. 6 ¶ 2).  The application for variance is signed by Mr. Barnett without any indicia that he signed it on behalf of a legal entity.

on the Grand Rapids Press. (Exhibit 13). The notice states that the ZBA would hold a hearing on an application for a variance that would allow two non-conforming billboards to remain on the property. (*Id.*). No notice of the meeting was sent to Gannett Outdoor. (Exhibit I and Exhibit 12 - Deposition of Steven Peterson, p. 31). At the hearing, the ZBA decided to approve the variance on the condition proposed in the Application, that the lease for the billboard not be renewed in 2006. (Exhibit H and Exhibit 14). In addition, the ZBA required the billboard to be taken down and the petitioner to post a bond assuring the billboard would be removed. (*Id.*). The attorney for the Township recommended that the petitioner and the Township enter into a written agreement regarding the conditions upon which the variance would be granted. (*Id.*). The Family Trust secured a $25,000.00 bond in favor of the Township. (Exhibit 16).[8]

The Agreement Regarding Variance (ARV) was signed on November 12, 1999 by William Barnett as trustee of the W&K Barnett Family Trust.[9] (Exhibit J and Exhibit 15). The ARV was signed by the Township Supervisor and Clerk on December 22, 1999. (Exhibit 15). The ARV states "WHEREAS, there is a sign/billboard owned by Gannett Outdoor Company ("Gannett") presently located on the Northerly line of the [] property . . ." (*Id.*). The Trust represented that it was the sole owner of the property. (*Id.* ¶ 2). The Trust (and its successors and assigns) agreed not to enter into a new agreement regarding the billboard which would permit the billboard to remain on the property beyond the expiration of the existing lease (*Id.* ¶ 4) and to remove the billboard upon expiration of the lease in 2006. (*Id.* ¶ 1). The ARV provides it shall run with the land and bind all future owners, successors, assigns and

_____

[8]This exhibit is a letter from William Fickes, senior vice president of Grand Bank indicating that the bank has opened an irrevocable letter of credit in favor of Defendant Township "for the account of W & K Barnett Family Trust (as amended dated August 3, 1999)."

[9]Again, it is unclear why the Family Trust is identified as the owner of the property. This is an example of the confusion created by the multitude of legal entities and poor record keeping that has complicated this dispute. Between the time that the hearing was held and when the ARV was signed, the Limited Partnership was again amended. On August 3, 1999, the Limited Partnership added, as a general partner, the Kathleen R. Barnett Trust and, as a limited partner, Julie L. Barnett. (Exhibit 20). The document identifies William G. Barnett as trustee of the William G. Barnett Trust as a general partner of the Limited Partnership and David A. Barnett and William S. Barnett as limited partners. (*Id.*). Furthermore, the document erroneously lists the date of the original Certificate of Limited Partnership as November 12, 1999. (*Id.*). The Family Trust is not mentioned in the document as having any interest in the Limited Partnership.

4

transferees in and to the property.  (*Id.* ¶ 3).  The ARV provides various remedies to the Township in the event the billboard was not removed, including entering the property to tear down the billboard, initiating court action, and initiating condemnation proceedings.  (*Id.* ¶ 7).  Finally, the Trust agreed to indemnify the Township "for, from and against any and all cause of action, lawsuits, matters or proceedings regarding, pertaining or associated to or with to [sic] this Agreement, including any damages, attorney fees, costs, and expenses relating thereto."  (*Id.* ¶ 8).

On April 1, 2003, under threat of condemnation, the Limited Partnership entered into an Agreement for Conveyance of Property with the Kent County Road Commission.  (Exhibit 22).  As part of the conveyance, the Limited Partnership executed a warranty deed to the property in favor the Road Commission.  (Exhibit K and Exhibit 23).  The warranty deed creates a perpetual non-exclusive easement in gross in favor of the Limited Partnership.  (*Id.*).  The easement was amended on July 3, 2003 to include a metes and bounds description of the easement.  (Exhibit 24).

In October 2003, the Limited Partnership executed a Purchase Agreement selling its rights to the easement to Stor-U-Own.  (Exhibit 25).  As part of the Purchase Agreement, Stor-U-Own acknowledged the existence of the ARV and the Limited Partnership's obligations under it and agreed "to fully defend, indemnify and hold Seller and the Trust harmless from all lawsuits, claims, proceedings, and actions of the Township arising out of the Buyer's failure to comply with the provisions of the Agreement Regarding Variance."  (*Id.* ¶ 5).  The Limited Partnership signed an assignment of its rights to Stor-U-Own on October 7, 2003.  (Exhibit L and Exhibit 27).  Stor-U-Own then assigned the interest in the easement to Disselkoen Properties, Inc. (Disselkoen Inc.)  (Exhibit M and Exhibit 26).  This assignment also included an indemnification clause.  "Assignee hereby agrees to assume and perform all of Assignor's obligations under the Ground Lease from and after the date of this Assignment and to defend and indemnify Assignor and hold it harmless from any liability that may accrue as the result of Assignee's failure to do so."  (*Id.*).  On August 4, 2004, the Road Commission executed a Second Amendment to the easement in favor of Randy Disselkoen Properties, LLC.[10]  (Exhibit N and Exhibit 28).

---

[10]Bringing this dispute closer to being characterized as labyrinthian by adding to the number of legal entities already involved in this dispute, Randy Disselkoen alleges the only shareholder of Disselkoen Properties, Inc. is the Randy Disselkoen Living Trust of which he is the grantor, trustee and

On March 1, 2006, Randy Disselkoen Properties, LLC (Disselkoen LLC) filed this action against the Cascade Charter Township in an effort to avoid having the billboard torn down.  On May 10, 2006, Randy Disselkoen, individually and not in any capacity or on behalf of any legal entity, executed an addendum to the December 6, 1991 ground lease with CBS Outdoor, Inc.[11] (Exhibit 29).  CBS Outdoor, Inc. (CBS) was added to the action through an order issued November 16, 2006.  A second amended complaint was filed on April 27, 2007.  The amended complaint includes six counts.  Count I raises a section 1983 claim alleging a violation of CBS Outdoor's First Amendment rights.  Count II raises another section 1983 claim alleging a violation of CBS Outdoor's Due Process rights under the Fourteenth Amendment.  Count III, brought by CBS Outdoor, alleges a violation of the Michigan Highway Advertising Act.  Count IV, brought by both Plaintiffs, alleges a violation of the Michigan Zoning Enabling Act.  Counts V and VI are declaratory actions, brought by both Plaintiffs, alleging the ARV is an unlawful agreement.  Under Count V, Plaintiffs allege the ARV is unenforceable because neither William G. Barnett nor the Family Trust had any ownership interest in the property when the ARV was signed and the property is owned by the Road Commission who is exempt from local zoning.  Under Count VI, Plaintiffs allege the underlying purpose of the ARV has failed because the Road Commission removed the buildings on the site.

## II.  SUMMARY JUDGMENT

Summary judgment is appropriate only if the pleadings, depositions, answers to interrogatories and admissions together with the affidavits show there is no genuine issue of material fact and that the moving party is

sole beneficiary.  (Dkt. No. 71 - Affidavit ¶ 2).  Mr. Disselkoen is the president and only member of the board of directors for Disselkoen Properties, Inc.  (*Id.* ¶¶ 3 and 4).  Disselkoen Properties, LLC is wholly and completely owned by Disselkoen Properties, Inc.  (*Id.* ¶ 6).  Mr. Disselkoen alleges, between October 2003 and November 12, 2003, Disselkoen Properties, Inc. transferred ownership of the easement to Randy Disselkoen Properties, LLC.  (*Id.* ¶ 10d).  However, and not surprising given the twists already present in this dispute, Mr. Disselkoen concedes he cannot locate any of the paperwork showing the transfer.  (*Id.* ¶ 10e).

[11]On November 20, 2007, the Board of Directors of Disselkoen Properties, Inc. adopted a resolution authorizing and ratifying the transfer of interest in the easement to Disselkoen Properties, LLC. (Dkt. No. 71 - Resolution).  The resolution deems the "transfer of these assets effective as of August 1, 2003."  (*Id.* ¶ 4).  This Court notes Disselkoen Inc. did not acquire any interest in the easement until October 2003, so the impact of the resolution is somewhat unclear.  Also on November 20, Mr. Dissekoen executed a written transfer of the easement from Disselkoen Inc. to Disselkoen LLC.  (Dkt. No. 71 - Assignment).

entitled to a judgment as a matter of law. FED. R. CIV. P. 56©.  The burden is on the moving party to show that no genuine issue of material fact exists, but that burden may be discharged by pointing out the absence of evidence to support the nonmoving party's case. *Bennett v City of Eastpointe*, 410 F.3d 810, 817 (6th Cir. 2005) (quoting *Celotex Corp. v. Catrett*, 477 U.S. 317, 325 (1986)).  The facts, and the inferences drawn from them, must be viewed in a light most favorable to the nonmoving party. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 255 (1986) (quoting *Matsushita Elec. Indust. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 587 (1986)).  Once the moving party has carried its burden, the nonmoving party must set forth specific facts showing there is a genuine issue for trial. FED. R. CIV. P. 56(e); *Matsushita*, 475 U.S. at 574.  The question is "whether the evidence presents a sufficient disagreement to require submission to the jury or whether it is so one-sided that one party must prevail as a matter of law." *Anderson*, 477 U.S. at 251-252.  III.  AMENDED COMPLAINT

A.  STANDING

Defendant Township alleges neither Disselkoen LLC nor CBS  has standing because neither are the real parties in interest.  (Brief at 47).  Defendant alleges Disselkoen LLC does not have standing because Stor-U-Own assigned its interest to Disselkoen Inc.  Defendant argues there are no documents establishing Disselkoen Inc. ever transferred the easement to Disselkoen LLC.  Defendant also argues Stor-U-Own acquired its interest from the Limited Partnership.  Defendant argues Mr. Barnett never assigned his interest in the Ground Lease to the Limited Partnership or anyone else.  Defendant alleges CBS does not have standing because the lease addendum was executed by Randy Disselkoen individually and not on behalf of either Disselkoen LLC or Disselkoen Inc. Defendant argues Randy Disselkoen has never had an interest in the easement.  Defendant alleges CBS does not own the billboard.

The three elements constituting the "irreducible constitutional minimum" for standing includes (1) an injury-in-fact that is concrete and particularized and actual or imminent and not conjectural or hypothetical, (2) a causal connection between the injury and the conduct complained of which is fairly traceable to the defendant, and (3) a likelihood that the injury will be redressed by a favorable decision. *Lujan v. Defenders of Wildlife*, 504 U.S. 555, 560-561 (1992); *Sault Ste. Marie Tribe of Chippewa Indians v. United States*, 288 F.3d 910, 914 (6th Cir. 2002).

A plaintiff bears the burden of proof to establish standing.  *Lujan*, 504 U.S. at 561.  The degree of proof required depends in part on the stage of litigation so that the factual allegations in the complaint may be sufficient to overcome a motion to dismiss.  *Id.*  "In response to a summary judgment motion, however, the plaintiff can no longer rest on such 'mere allegations,' but must 'set forth' by affidavit or other evidence, 'specific facts,' Fed. Rule Civ. Proc. 56(e), which for purposes of the summary judgment motion will be taken as true."  *Id. See also Chippewa Indians*, 288 F.3d at 915.

This Court finds Plaintiffs have provided sufficient evidence to establish standing to withstand the motion for summary judgment.  Disselkoen LLC, as the alleged owner of the easement on which the billboard is located, has established at least a genuine issue of material fact to avoid summary judgment on standing.  Mr. Barnett may have improperly leased property owned by the Limited Partnership to Gannett in 1991 and retained the profits from that lease.  That does not change the fact that the Limited Partnership was the actual owner of the real property on which the billboard was located.  (Exhibit 4).  The Limited Partnership transferred its interest to the Kent County Road Commission, but created and retained an easement for the purposes of servicing the billboard.  (Exhibit K and Exhibits 22, 23 and 24).  The Limited Partnership sold its interest in the easement to Stor-U-Own.  (Exhibit 27).  Stor-U-Own then sold the easement to Disselkoen Inc.  (Exhibit 26).  Randy Disselkoen submits an unrebutted affidavit alleging that Disselkoen Inc. transferred the easement to Disselkoen LLC.  (Dkt. No. 71 - Affidavit).  The Road Commission also executed an amendment to the easement for the benefit of Disselkoen LLC.  (Exhibit 28).  Disselkoen LLC has established a genuine issue of material fact that it is the party who holds the easement on which the billboard is located when the facts contained in those documents, and the inferences that arise from them, are viewed in a light most favorable to Disselkoen LLC as the non-moving party.

CBS, as the alleged owner of the billboard, has established at least a genuine issue of material fact to avoid summary judgment on the issue of standing.  Eller Outdoor received a permit to erect and maintain a billboard on the property in 1977.  (Exhibit P).  Eller Outdoor also signed a lease with the then owner of the property to erect

and maintain a billboard.  (Dkt. No. 72 - 1977 Eller lease).  In 1979, Eller Outdoor merged with Gannett, Inc.[12]  The record shows Mr. Barnett has never claimed ownership of this billboard.  In 1982, Virginia Beall, the former owner of the property, and William Barnett sent a letter directing where the rent check should be sent under the then existing lease which begins "[t]his letter is regarding *your sign* at 3910 Thornapple."  (emphasis added) (Dkt. No. 72 - letter).  In another letter dated January 30, 2004, Mr. Barnett informs the sign owner that he has sold the easement and that the new easement owner is Randy Disselkoen who should now receive the rent checks.[13]  (Dkt. No. 72 - letter).  This second letter begins "[w]e are writing to inform you that we have sold the easement to *your billboard . . .*"  (emphasis added) (*Id.*).  In December 1991, William Barnett leased ground space to Gannett Outdoor

---

[12]At oral argument, the parties discussed the history of Eller Outdoor and could not agree on whether Eller Outdoor and Eller Media were the same entity.  Plaintiff CBS alleges Eller Outdoor was part of Combined Communications when it became part of Gannett in the largest media merger in history, at the time.  Plaintiff alleges Eller Media was created years later.  At oral argument, Plaintiff provided the Court with a number of documents attempting to establish ownership of the sign.  (Dkt. No. 72).  Defendant offers exhibits from the website wikipedia indicating that Eller Outdoor was a predecessor to Clear Channel Outdoor, a competitor of CBS Outdoor.  (Exhibits 35 and 36 attached to reply brief).

Under Federal Rule of Evidence 201, this Court takes judicial notice of the 1979 corporate merger of Gannett, Inc. and Combined Communications Corp. (CCC) which included Eller Outdoor.  Eller Outdoor Advertising was founded in 1962 by Karl Eller.  In 1968, Mr. Eller merged Eller Outdoor and formed CCC.  In 1979, CCC was merged with Gannett, Inc.  *See* http://www.advertisinghalloffame.org/members/member_bio_text.php?memid=612&uflag=e&uyear= (Karl Eller's biography at the Hall of Fame for the American Advertising Federation, last checked December 14, 2007) and http://phoeniz.bizjournals.com/phoenix/stories/2005/08/22/story3.html (article in the Phoenix (Arizona) Business Journal dated August 22, 2005, last checked December 14, 2007).

The documents submitted by Plaintiff are sufficient to create a genuine issue of material fact regarding ownership of the sign.  For the purposes of this motion, the Court does not make credibility assessments of documents.  That said, despite the proliferation of federal court opinions citing wikipedia, *see e.g. United States v. Bazaldua*, 506 F.3d 671, 673 n. 2 (8th Cir 2007), this Court is skeptical of relying on the anonymous and voluntarily edited website for anything more than general background information.  *See* Burt Helm, *Wikipedia: "A Work in Progress"*, Business Week, Dec. 14, 2005 (available at http://www.businessweek.com/technology/content/dec2005/tc20051214_441708.htm and last viewed Dec. 14, 2007) and Daniel Terdiman, *Wikipedia Faces Growing Pains*, Wired, Jan. 10, 2005 (available at http://www.wired.com/culture/lifestyle/news/2005/01/66210 and last viewed Dec. 14, 2007).  Although this Court has NO DOUBT that Defendant did nothing improper, this Court notes the ease with which wikipedia entries can be altered and further notes that others have edited entries for improper reasons.  *See e.g.* John Borland, *See Who's Editing Wikipedia - Diebold, the CIA and a Campaign*, Wired, Aug. 14, 2007 (available at http://www.wired.com/politics/onlinerights/news/2007/08/wiki_tracker?currentPage=1 and last viewed Dec. 14, 2007).

[13]This letter was sent to Viacom, a successor in interest to Gannett and a precesssor to CBS.

9

of Michigan for an existing sign structure.  (Exhibit D and Exhibit 6).  CBS is the successor in interest to Gannett.[14]

CBS has established standing as the owner of the billboard when the facts contained in these documents, and the

inferences that arise from them, are viewed in a light most favorable to CBS as the non-moving party.[15]

B.  COUNT I - Violation of First Amendment (42 U.S.C. § 1983)

Intervening Plaintiff CBS Outdoor alleges the Township acted under color of state law to force the removal

of CBS Outdoor's billboard from the easement.  Defendant Township requests summary judgment on this count,

Plaintiffs do not.  Defendant argues (1) the sign ordinance does not violate the First Amendment, (2) the allegations

cannot apply to contractual obligations under the ARV, and (3) this Court lacks subject matter over the allegation.

1.  First Amendment

Defendant argues the sign ordinance and the conditional variance do not violate  the First Amendment

because both are content-neutral and tailored to advance a legitimate government interest.  Plaintiffs counter that

Defendant has not established that the attempts to remove the sign are content-neutral.  Plaintiffs argue, in the

alternative, the ordinance is not narrowly tailored to achieve a significant government interest while leaving open

ample alternative channels for communication.  Plaintiffs challenge Defendant to justify the connection in the

ordinance between the construction permit for a nearby building and the legal status of a billboard.  Plaintiffs insist

that Defendant has failed to respond to their as-applied challenge to the ordinance.

The United States Supreme Court recognizes that billboards are a medium by which social, political and

commercial messages, among others, are presented to the public.  *Metromedia, Inc. v. City of San Diego*, 453 U.S.

490, 501 (1981).  Regardless of the message, billboards are also large, immobile and generally permanent structures.

*Id.* at 502.  Consequently, governments have legitimate interests in regulating the noncommunicative aspects of

---

[14]CBS Outdoor, through a series of corporate acquisitions and mergers, is the successor in interest to Gannett, Viacom, Outdoor Systems, and Infinity Outdoor.  *See* Dkt. No. 72 - Michigan Department of Labor & Economic Growth business entity search results. *See also Outdoor Sys. Adver., Inc. v. Korth*, 607 N.W.2d 729, 730 n.1 (Mich. App. 2000).

[15]Although not raised by either party, it is possible that Defendant Township should be estopped from challenging that Gannett was the owner of the sign in 1999.  In the ARV, the Township acknowledged that Gannett Outdoor Co. owned the billboard at issue.  This Court, however, need not speculate whether the ARV prevents the Township from now challenging that fact.

billboards while "the First and Fourteenth Amendments foreclose a similar interest in controlling the communicative aspects." *Id.* When reconciling the competing interests at stake, the government's interest in regulating the structures and the individual's right to expression, a court must begin "with a precise appraisal of the character of the ordinance as it affects communication." *Id.* at 503. In order to find a regulation is a reasonable time-place-and-manner restriction on expression, the regulation must (1) be content-neutral, (2) serve a significant government interest, (3) be narrowly tailored to serve that government interest and (4) leave open ample alternative channels of communication. *Jobe v. City of Catlettsburg*, 409 F.3d 261, 267 (6th Cir. 2005).

When determining whether a regulation is content neutral, the principle inquiry is whether the government has adopted the regulation on expression because of a disagreement with the message it conveys. *Ward v. Rock Against Racism*, 491 U.S. 781, 791 (1989). "The government's purpose is the controlling consideration. A regulation that serves purposes unrelated to the content of expression is deemed neutral even if it has an incidental effect on some speakers or messages but not others." *Id.* A regulation is content based, on the other hand, if the content of the expression determines whether the regulation applies. *City of Cincinnati v. Discovery Network, Inc.*, 507 U.S. 410, 429 (1993). Generally, regulations on the height and size of a billboard is not a restriction on the basis of content. *Prime Media, Inc. v. City of Brentwood, Tenn.*, 398 F.3d 814, 819 (6th Cir. 2005).

A time, place and manner regulation must be narrowly tailored to serve a legitimate government interest, but the regulation need not be the least restrictive or the least intrusive means of regulation. *City of Brentwood*, 398 F.3d at 819 (quoting *Ward,* 491 U.S. at 798). "The requirement for narrowly tailoring is satisfied 'so long as the . . . regulation promotes a substantial government interest that would be achieved less effectively absent the regulation.'" *Ward*, 491 U.S. at 799 (quoting *United States v. Albertini*, 472 U.S. 675, 689 (1985)). However, government may not substantially burden the expression any more than is necessary to further the legitimate interest. *Id.* Courts have found that government regulation of billboards may satisfy the narrowly tailored requirement. *Metromedia*, 453 U.S. at 508 ("if the city has a sufficient basis for believing that billboards are traffic hazards and are unattractive, then obviously the most direct and perhaps the only effective approach to solving the problem they create is to prohibit them."); *Id.* at 570 (Rehnquist, J., dissenting) (finding the aesthetic justification by itself was

11

a sufficient justification to uphold a total prohibition on billboards); *City of Brentwood,* 398 F.3d at 821 (upholding the ordinance on the basis that billboards are a visual blight and impact traffic safety); *Wheeler v. Comm'r of Highways*, 822 F.2d 586, 595 (6th Cir. 1987) (upholding billboard restrictions on the basis of the recreational value of public travel and preservation of natural beauty along interstate highways).

In *Metromedia*, the Supreme Court evaluated the implication of restrictions on billboards for both noncommercial and commercial speech, noting that the restriction at issue implicated both types of speech.[16] Although commercial speech receives less protection than noncommercial speech, commercial speech is still protected under the Constitution. *Metromedia*, 453 U.S. at 507 (quoting *Cent. Hudson Gas & Elec. Corp. v. Pub. Serv. Comm'n*, 447 U.S. 557, 562-563 (1980)). Government restrictions on commercial speech must meet a four part test. *Id.*

> (1) The First Amendment protects commercial speech only if that speech concerns lawful activity and is not misleading. A restriction on otherwise protected commercial speech is valid only if it (2) seeks to implement a substantial government interest, (3) directly advances that interest, and (4) reaches no further than is necessary to accomplish the given objective. *Id.*

The Supreme Court held the regulation was valid under the four part test. *Id.* at 512. The Court found no dispute over the first, second and fourth prongs of the test. *Id.* at 507. The Court concluded the regulation did directly advance the government's interest in traffic safety and appearance of the city and justified the conclusion on the basis of the "accumulated, common-sense judgments of local law-makers and of many reviewing courts that billboards are real and substantial hazards to traffic safety." *Id.* at 509. The Court reached the same conclusion with regard to the justification that billboards undermine local beauty. *Id.* at 510. "Such esthetic judgments are necessarily subjective, defying objective evaluation, and for that reason must be carefully scrutinized to determine if they are only a public rationalization of an impermissible purpose." *Id.*

Defendant's sign ordinance identifies nine purposes for regulating signs, including promoting public peace, health, and safety, protecting natural beauty, protecting property values, and eliminating distractions which are

---

[16]The majority recognized the city had legitimate interests in controlling the noncommunicative aspects of signs, but found the ordinance unconstitutional on its face because of the nature of the regulations on noncommercial speech. *Id.* at 513-515.

hazardous to motorists.  Cascade Charter Township, MI, Sign Ordinance, Ordinance 14 of 1997, (Dec. 10, 1997), Chapter 2.  (Exhibit E and Exhibit 9).  By its explicit terms, the ordinance does not regulate the contents of a sign and instead regulates the signs based on zoning districts.[17]  Sign Ordinance, Chapter 3.  (*Id.*). Chapter 6 generally outlines the size and location of signs. Sign Ordinance. (*Id.*).  Chapter 7 of the ordinance regulates non-conforming signs. Sign Ordinance. (*Id.*).  A sign may lose its legal non-conforming status under various conditions, including when a building permit is issued for any construction on the premises where the sign is located which increases the total building square footage by more than 5% or 5,000 square feet, whichever is less.  Sign Ordinance § 7.02(1)©. (*Id.*).

This Court concludes the sign ordinance does not violate the First Amendment.[18]  The ordinance is content-neutral; it does not regulate signs by the subject matter of the message.  The ordinance regulates signs in order to advance significant government interests in enhancing the natural landscape and reducing traffic hazards.  The ordinance is narrowly tailored to meet those interests.  By regulating the location and size of billboards, the Township assures a balance between the freedom of expression found on the billboards and the minimization of the harm which billboards may cause.  The ordinance does not completely ban billboards, leaving open the channel of communication.

Plaintiffs' strongest argument may be that the Township has not sufficiently tied the sign ordinance to building permits.  Plaintiffs' argument is an as-applied attack on the enforcement mechanism of the ordinance.  Plaintiffs assert Defendant cannot meet the last three prongs of the *Central Hudson* test for regulations on commercial speech. This Court disagrees.  Defendant clearly has an interest in local traffic safety and the natural beauty of the area.  The Supreme Court has held that billboard regulations directly advance those interests as evidenced by the "accumulated, common-sense judgments of local lawmakers and the many reviewing courts." *Metromedia*, 453 U.S. at 509.  *See also Pagan v. Fruchey*, 492 F.3d 766, (6th Cir. 2007) (en banc) (finding

---

[17]Sexually graphic signs are explicitly prohibited. § 5.01(15).

[18]Plaintiffs assert there are other reasons why the ordinance may not be constitutional under the First Amendment.  *See* Plaintiffs' Brief in Response to Defendant's Cross Motion n. 7 and 8.  None of those concerns are at issue in this dispute.

unconstitutional an ordinance prohibiting "for sale" signs on vehicles parked on public roads because of a total lack of evidence to support the government's interest in the regulation and distinguishing the law of billboards in *Metromedia* where the Supreme Court identified an accumulated history of upholding regulations on billboards). In addition, Defendant has an interest in eliminating legal nonconforming uses. *Century Cellunet of Southern Michigan Cellular, Ltd. P'ship v. Summit Township*, 655 N.W.2d 245, 247 (Mich. App. 2002) ("one of the goals of local zoning is the gradual elimination of nonconforming uses"); *City of Troy v. Aslanian*, 428 N.W.2d 703, 705 (Mich. App. 1988). *See Outdoor Sys., Inc. v. City of Mesa*, 997 F.2d 604, 616-617 (9th Cir. 1993) (finding, in the context of a takings claim, the City's interest in restricting billboards and in eliminating nonconforming billboards were sufficient to uphold a provision in the sign ordinance which required the removal of nonconforming billboards from vacant lots before the certificates of occupancy would be issued for a development on the parcel). The need for a variance from the sign ordinance serves both the goal of regulating billboards on the site as well as the goal of eliminating nonconforming uses. Finally, the ordinance does not ban billboards, but regulates their size and location.                    2.  Contractual obligations under the ARV.

Defendants argue Plaintiffs' claims under the First Amendment cannot reach the ARV because the First Amendment does not impact contracts. Plaintiffs counter that voluntary contracts in which a party waives his or her rights under the First Amendment are unenforceable, citing *Sambo's Rests., Inc. v. City of Ann Arbor*, 663 F.2d 686 (6th Cir. 1981).[19]  Plaintiffs argue Mr. Barnett signed the ARV only because the Township would not issue permits for the additional buildings without the condition. (Exhibit C - Mr. Barnett's Second Deposition, p. 46).

_____

[19]The Sixth Circuit issued three opinions in *Sambo's Restaurant*. Plaintiffs cite the opinion of Judge Celebrezze with whom Judge Merritt concurs in part. Because of the concurrence on the outcome, the district court's decision was reversed. Judge Merritt agreed that the name of the restaurant was commercial speech and therefore protected by the First Amendment, but disagreed on the reason that City's action was impermissible. *Sambo's Restaurant*, 663 F.2d 686, 695-696 (J. Merritt concurring). *See Id.* at 696-708 (J. Keith dissenting). As a result of the fractured opinions, *Sambo's Restaurant* offers little in the way of binding precedent. *See Marks v. United States*, 430 U.S. 188, 194 (1977) ("When a fragmented Court decides a case and no single rationale explaining the result enjoys the assent of five Justices, 'the holding of the Court may be viewed as that position taken by those Members who concurred in the judgments on the narrowest grounds'" (quoting *Gregg v. Georgia*, 428 U.S. 153, 169 n. 15 (1976) (opinion of Stewart, Powell, and Stevens, J.J.)).

Defendant has the better argument on this point; the ARV is not subject to the restrictions on government regulation of speech under the First Amendment. *Sambo's Restaurants* is easily distinguishable from the facts in this action. *Sambo's Restaurants* involved a petition for a site plan approval for the construction of a restaurant in Ann Arbor, Michigan. The site plan complied with all applicable ordinances and regulations, so there was no legal basis for rejecting it. However, the City Council refused to approve the plan because the name "Sambo's" was objectionable. About one year later, the restaurant group resubmitted the site plan with the following written addition: "It is agreed that the name "Sambo's" will not be used in regard to this restaurant." *Sambo's Restaurants*, 663 F.2d at 688. The proposed site plan, with the additional stipulation, was approved and the restaurant was built under the name "Jolly Tiger." After losing money for several years under that name, the restaurant group petitioned the City Building Department for permits for two building signs displaying the name "Sambo's" on the restaurant. The permits were issued by the department, but later revoked by the City on the basis of the agreement contained in the site plan.

The restaurant group sued. The district court found the provision in the site plan was valid and enforceable, that the restaurant group waived its First Amendment rights, but did not consider whether the trade name should be afforded any First Amendment protection. *Sambo's Restaurants*, 663 F.2d at 689. The Sixth Circuit reversed. Judge Celebrezze explained that the City may revoke the permits only if it could satisfy the standard for waiver of constitutional rights because by revoking the permits, the City infringed on First Amendment rights. *Id.* at 690. Judge Celebrezze concluded state contract law did not bind the restaurant group because there was insufficient consideration for the agreement and therefore there was no evidence of a waiver. *Id.* at 691.[20] He explained that the only benefit evidenced in the record was approval of a site plan; however the approval could not constitute adequate consideration because it was required by law. *Id.* In order to waive a constitutional right, there must be evidence of an "intentional relinquishment or abandonment of a known right or privilege." *Id.* (quoting *Johnson v. Zerbst*, 304 U.S. 458, 464 (1938)).

---

[20]Judge Merritt, on the other hand, found the contract was not binding because the City obtained the agreement through coercion or duress. *Sambo's Restaurant*, 663 F.2d at 696 (J. Merritt concurring).

Unlike the petition underlying the dispute in *Sambo's*, there was no obligation for the ZBA to approve the variance request in the application underlying this dispute.  Mr. Barnett did not have to agree to refrain from renewing the lease when it expired.  Mr. Barnett could have instead decided he would rather have the income he derived from the sign over the income he would derive from the construction of additional rental units in his self storage business.  Therefore, unlike the situation in *Sambo's*, this set of facts does "present a situation where there is an agreement which is binding as a matter of state contract law."  663 F.2d at 691 (J. Celebrezze)..  Consideration constitutes evidence of a waiver.  *Id.*  Even without consideration, Mr. Barnett waived whatever First Amendment rights he had related to his ability to lease land to the owner of the sign.  Examining the record before this Court, it appears that Mr. Barnett, not Defendant, suggested the condition for approval of the variance.  *See* Exhibit G and Exhibit 10.  Furthermore, the record does not indicate coercion or duress.  Even if Defendant was the party who proposed the condition, the minutes of the meeting regarding the variance reflect two parties attempting to negotiate possible alternatives.  *See* Exhibit H and Exhibit 14.  The application for the variance and the discussion at the meeting provide sufficient evidence that the condition to which Mr. Barnett agreed, that the lease would not be renewed and the sign torn down, was an intentional abandonment of a known right or privilege.  Therefore, under the rationales offered by both Judge Celebrezze and Judge Merritt, the ARV is enforceable against the party to the contract.

Plaintiff CBS Outdoor also cites *G & V Lounge, Inc. v. Michigan Liquor Control Comm'n*, 23 F.3d 1071 (6th Cir. 1994).  In that opinion, the Sixth Circuit found a contract between the City of Inkster and a local business was unenforceable.  *Id.* at 1077-1078.  The City conditioned the receipt of a liquor license on an agreement not to permit any topless entertainment on the premises.  The licensee's successor in interest sued to prevent the enforcement of the contract.  The court concluded the condition impermissibly conditioned the license on the waiver of a right to free expression under the First Amendment.  *Id.*  at 1077.  The court also found the contract was unenforceable under state law.  *Id.* at 1078 (citing *Bundo v. City of Walled Lake*, 218 N.W.2d 869, 870 (Mich App. 1974)).

Neither *G & V* nor *Bundo* support Plaintiff's conclusion.  In both cases, the plaintiffs agreed to refrain from

providing topless dancing, a form of free expression protected under the First Amendment.  In this case, the property owner did not agree to forgo any forms of free expression in exchange for the conditional variance.  Instead, the property owner agreed not to renew a lease where a billboard was located.  The lease is not a form of free expression protected by the First Amendment.

          3.   Subject Matter Jurisdiction.

Defendant contends Plaintiffs failed to appeal the final decision of the ZBA to the Township Board under the sign ordinance and failed to appeal any final decision to a state circuit court under the Michigan Constitution.  Defendant argues Plaintiffs cannot circumvent the appeals procedure by filing a separate cause of action, citing *Krohn v. City of Saginaw*, 437 N.W.2d 260 (Mich. App. 1988).  Defendant alleges Plaintiffs failed to exhaust their administrative remedies under the procedure provided by Michigan law.  Defendant asserts this argument against Counts II, III and IV of the complaint.  Plaintiffs respond that this Court has subject matter jurisdiction under 28 U.S.C. § 1331 and § 1343(a)(4).  Defendant contends, even if Plaintiffs need not exhaust administrative remedies for the federal claims, that argument would not apply to the supplemental claims in Counts III and IV.  In its reply brief, Defendant argues, even if Plaintiffs do not need to exhaust remedies, there has been no "final" decision.  In the alternative, if a final decision was made when the variance was granted, then the three year statute of limitations has run.

This Court has jurisdiction over the action.  Plaintiffs first two counts arise under 42 U.S.C. § 1983.  Section 1983 provides a federal cause of action for a person who has allegedly been deprived of his or her rights by another acting under color of state law.  *Conn v. Gabbert*, 526 U.S. 286, 290 (1999).  Under section 1331, this Court has subject matter jurisdiction over civil actions arising under the Constitution and the laws of the United States.  28 U.S.C. § 1331.  Furthermore, under section 1343, a district court has original jurisdiction over civil actions authorized by law for relief authorized under any Act of Congress providing for the protection of civil rights.  28 U.S.C. § 1343(a)(4).  This Court has jurisdiction over the matter under those three statutes.  *See Cicchini v. Blackwell*, 127 F.App'x 187, 189 (6th Cir. 2005) (explaining because plaintiff raised claims arising under section

17

1983, the district court had jurisdiction under both section 1331 and 1343(a)); *Niece v. Sawyer*, 65 F.3d 169 (6th Cir. 1995) (unpublished table opinion) (per curiam) ("the district court acquired original jurisdiction over Niece's § 1983 claims pursuant to 28 U.S.C. §§ 1331 & 1343(a)").  Furthermore, section 1983 does not require a party to exhaust administrative remedies before filing suit.  *Porter v. Nussle,* 534 U.S. 516, 523 (2002); *Patsy v. Florida Bd. of Regents*, 457 U.S. 496 (1982).  *See also Wal Juice Bar, Inc. v. City of Oak Grove, Ky.*, 211 F.App'x 358, 361 (6th Cir. 2006) (holding plaintiff did not need to exhaust administrative remedies contained within the zoning ordinance in order to challenge the constitutionality of the ordinance in a federal lawsuit through a section 1983 action.).  The Court has jurisdiction over pendant state claims under 28 U.S.C. § 1367(a).

Defendant's finality and statute of limitation arguments are not properly before this Court as part of Defendant's cross motion for summary judgment.  Both issues were initially raised in Defendant's reply brief.  As the authorities cited by Defendant explain quite succinctly, the exhaustion (issue raised in Defendant's motion for summary judgment) and finality (issue raised in Defendant's reply brief) issues overlap, but are "conceptually distinct." *Williamson County Reg'l Planning Comm'n v. Hamilton Bank of Johnson City*, 473 U.S. 172, 192 (1985).  *See Bowers v. City of Flint*, 325 F.3d 758, 762 (6th Cir. 2003) (quoting *Williamson County*).  Issues raised for the first time in a reply brief are not properly before a court because the other side has no opportunity to respond.  *N.L.R.B. v. Int'l Health Care, Inc.*, 898 F.2d 501, 506 n. 5 (6th Cir. 1990); *Sundberg v. Keller Ladder*, 189 F. Supp.2d 671, 682-683 (E.D. Mich. 2002).

In summary, with regard to the first count of the amended complaint,  Defendant is entitled to summary judgment.  This Court does have subject matter jurisdiction over the action.  The sign ordinance does not violate the First Amendment, as applied to the billboard underlying this dispute.  The ARV is enforceable against the party who signed the contract and any successor in interest.  Accordingly, count one is dismissed against Defendant Township.  Defendant Township has established there are no genuine issues of material fact on this count and Plaintiff CBS Outdoors has not submitted documentary evidence which, when viewed in a light most favorable to it, creates a genuine issue of material fact.

C.  COUNT II - Violation of Fourteenth Amendment (42 U.S.C. § 1983)[21]

Plaintiff CBS Outdoor requests summary judgment on this claim.  Plaintiff alleges protected property rights in both the billboard and the lease.  Plaintiff alleges it received no notice of the ZBA hearing or the opportunity to participate before the conditional variance which resulted in the extinguishment of its property rights was issued.  Defendant also requests summary judgment on this claim.  Defendant argues procedural due process claims do not apply to contracts and that Plaintiff CBS Outdoor has no property interest which has been extinguished.[22]  In the reply brief, Defendant argues Plaintiff has no right to notice when personal property is located on the real property to which the variance applies.[23]

Before an individual is deprived of his or her property interests by the government, due process requires the individual be given notice and an opportunity for a hearing.  *Cleveland Bd. of Education v. Loudermill*, 470 U.S. 532, 542 (1985); *Bd. of Regents of State Colleges v. Roth*, 408 U.S. 564, 569-570 (1972).  The property interest must arise from some independent source, such as state law.  *Loudermill*, 470 U.S. at 538; *Roth*, 408 U.S. at 577.  The notice which must be provided must be reasonably calculated, under all the circumstances, to apprise the interested parties of the pendency of the action and afford them an opportunity to present their objections.  *Mullane v. Cent. Hanover Bank & Trust Co.*, 339 U.S. 306, 314 (1950) (explaining further that "when notice is a person, due process

_____

[21]At oral argument, Plaintiffs conceded that the amended complaint does not state a claim for a violation of substantive due process.

[22]Defendant also argues this Court does not have subject matter jurisdiction over the claim.  That issue has already been resolved against Defendant under Count I.  In its reply brief, Defendant takes issue with a case cited by Plaintiffs in their response brief, *Nasierowski Bros. Inv. Co. v. City of Sterling Heights*, 949 F.2d 890 (6th Cir. 1991).  Plaintiffs cite *Nasierowski* for the proposition that a procedural due process claim is instantly recognizable in federal court.  Defendant argues *Nasierowski* has subsequently been limited to cases where the procedural due process claim stands alone and that due process claims are subject to the rule of finality in cases where other constitutional claims have been raised, citing *Bigelow v. Mich. Dep't of Natural Res.*, 970 F.2d 154 (6th Cir. 1992).  Similar to the finality and statute of limitations argument raised under Count I in Defendant's reply brief, the argument that this Court does not have subject matter jurisdiction over Plaintiffs' procedural due process claim because other constitutional claims have been raised is not properly part of Defendant's summary judgment motion.  That argument is raised for the first time in Defendant's reply brief and Plaintiff has not been afforded an opportunity to respond to it.

[23]As explained above, issues raised for the first time in a reply brief are not properly part of a summary judgment motion.  In addition, Defendant cites no authority for the assertion.

19

which is a mere gesture is not due process. The means employed must be such as one desirous of actually informing the absentee might reasonably adopt to accomplish it.").

For a property interest to give rise to the due process requirement, the interest must be more than an abstract desire or a unilateral expectation, but rather a legitimate claim of entitlement. *Roth*, 408 U.S. at 577. Leaseholds are property interests. *Dep't of Hous. and Urban Dev. v. Rucker*, 535 U.S. 125, 135 (2002). The value of a leasehold in a property condemnation action is measured by the value of the remainder of the term plus the value of any right to renewal. *United States v. Petty Motor Co.*, 327 U.S. 372, 381 (1946). A lessee with no right of renewal has a property interest in the market value of the improvements made to the lease without regard to the remaining term of the lease. *Almota Farmers Elevator & Warehouse Co. v. United States*, 409 U.S. 470 (1973) (involving condemnation proceedings against grain elevators where the lease had more than seven years remaining). Several state courts have distinguished *Almota* in cases involving billboards on the basis that the grain elevators were permanent improvements to the land while billboards are not. *See Clear Channel Outdoor v. Seattle Popular Monorail,* 150 P.3d 649 (Wash. App. 2007) (finding the billboards were removable fixtures not improvements to property and that the lease had expired on its terms); *Lamar Advantage G.P. Co., LLC v. Addison Park Dist.*, 820 N.E. 2d 626 (Ill. App. 2004) (finding the lease expired on its own terms and finding that *Almota* is a narrow exception to the general rule in *United States v. Petty Motor Co.*); *Whiteco Indus., Inc. v. City of Tuscon*, 812 P.2d 1075 (Ariz. App. 1990) (same). *See also Adams Outdoor Adver. v. City of East Lansing (after remand)*, 614 N.W.2d 634, 640 n. 8 (Mich. 2000) ("to the extent that Adams might be interpreted as making a takings claim with respect to its personal property interest in the signs, such a claim fails. . . . They are still available for use in other locations. Thus, application of the code to the rooftop signs obviously does not effect a taking of the signs themselves.").

Plaintiff CBS Outdoor does have a property interest here; however, Defendant has not deprived Plaintiff of that property interest. As resolved above, CBS Outdoor owns the billboard. At the time of the hearing and at the time when this action was filed, CBS Outdoor had a property interest in the lease for the easement on which the

20

billboard is located.[24]  Plaintiff CBS Outdoor has not been deprived of its billboard.  Regardless of whether the billboard will remain standing or whether it must be taken down, Plaintiff CBS Outdoor will continue to own it. Plaintiff CBS Outdoor has not been deprived of the lease.  The condition upon which the variance was granted allowed the lease to expire on its own terms.  Accordingly, this Court finds Plaintiff CBS Outdoor has not been deprived of any property interest and therefore no notice and opportunity to be heard was required.

Plaintiff CBS Outdoor argues the expectation of lease renewal is a compensable property right, citing *Almota Farmers*.  However, the opinion in *Almota Farmers* does not support Plaintiff's position.[25]  The issue in *Almota* was the amount of compensation a party is owed for the <u>improvements made on a lease</u> with no right to renewal when the leasehold is condemned.  The majority concluded, based upon the concept of market value, the party should be compensated based on the assessment of the value of the improvements over their useful life and not limited to the value of the improvements for the length of the leasehold.  *Almota*, 409 U.S. at 473.  The majority reasoned that had Almota sold the leasehold, the market would have set a price to reflect the ability of the buyer to use the improvements over their useful life rather than for the remainder of the lease term with Almota then retaining the right to salvage the improvements at the end of the lease.  *Id.* at 475.  The four person dissent carefully explained that the majority opinion conceded, consistent with the holding in *Petty Motor Co.,* that the expectation of having a lease renewed is not itself a compensable property interest.  *Id.* at 481 (Rehnquist, J. dissenting).

---

[24]Gannett, Plaintiff CBS Outdoor's predecessor in interest held the lease at the time.  For ease of reference, this Court will simply refer to Plaintiff CBS Outdoor here.

[25]Plaintiffs cite *Almota* and *In re Acquisition of Billboard Leases and Easements*, 517 N.W.2d 872 (Mich. App. 1994) for the proposition that the expectation of a lease renewal is a compensable property right.  Plaintiffs' Brief in Response at 23.  Neither case supports that proposition.  However, the opinion in *In re Acquisition* does support the proposition that when a municipality condemns a lease with a billboard on it, the owner of the billboard is owned just compensation for the "costs associated with detaching and reattaching their signs somewhere else."  517 N.W.2d at 873.  *See In re the Laying Out, Establishing and Opening of the John C. Lodge Highway in the City of Detroit*, 65 N.W.2d 820, 824-825 (Mich. 1954); *In re Widening of Gratiot Ave., City of Detroit*, 293 N.W. 755, 758 (Mich. 1940); *In re Condemnation of Private Property to Acquire Land of the Detroit Metropolitan County Airport*, 536 N.W.2d 598, 601-602 (Mich. App. 1995).

Plaintiff CBS Outdoor also argues that "Michigan law has long recognized that a tenant's expectancy of a lease renewal is a valuable property right," quoting *Pikes Peak Co. v. Pfunter*, 123 N.W. 19, 20 (1909).[26]  (Brief in Support at 16).  Justice Grant's opinion states "while it is true the tenant, in the absence of an express agreement, has no enforcible [sic] right to renewal of the lease, yet it is natural that, other things being equal, the landlord would lease to his present tenant, and that the tenant would profer to renew the lease.  This expectancy is recognized by the law as a valuable asset belonging to the tenant."  *Id.*  Justice Grant's statement is curious because the ten year lease involved in the case included a right to extend the lease for another five years.  *Id.* at 19.  Mr. Pfunter, a former stockholder, member of the board of directors, general manager, secretary and treasurer of the leaseholder, exercised the right to extend the lease one week before ending his relationship with the corporate leaseholder, but concealed what he had done from his employer.  *Id.*  When the directors of the corporation discovered Mr. Pfunter had exercised the renewal, they passed a resolution announcing that Mr. Pfunter was an agent of the corporation, had acted on behalf of the corporation, and ratified the extension of the lease.  *Id.*  The issue before the Michigan Supreme Court was who held the extension of the lease, the corporation or Mr. Pfunter.  Relying on the law of agency, the Court concluded the corporation held the extension of the lease.  From these facts, Justice Grant's statement is dicta because the tenant had a right to renew the lease.

Under the facts of this case, this Court holds that Plaintiff CBS Outdoor's expectation that the lease would be renewed is not a property interest sufficient to give rise to a claim for violation of procedural due process.  Plaintiff's bare expectation or desire to enter into another lease at the time of defendant's hearing is not an entitlement or interest which implicates the notice requirements of due process.  This conclusion is consistent with the holdings

---

[26]Although the opinion is almost 100 years old, this Court can find no Michigan cases citing *Pfunter* for this proposition of law.  Justice Grant does not cite any legal authority to support his conclusion.  The parties have not made this Court aware of any other Michigan authority supporting this conclusion and this Court has not located any such authority.

of both *Petty Motor Co.* and *Almota* as well as the weight of authority in other jurisdictions.[27]  Therefore, Defendant

is entitled to summary judgment on Count II.

D.  COUNT III - Violation of the Michigan Highway Advertising Act[28]

Defendant requests summary judgment on this count arguing (1) the Court lacks subject matter

jurisdiction,[29] (2) the Highway Act does not require payment to persons who merely wish to obtain a billboard (3)

it did not require or cause the removal of the billboard by granting the conditional variance, (4) the claim has no

bearing on the ARV, and (5) the Highway Act does not require just compensation for ending a lease.[30]  In their Brief

in Response to the Cross Motion, Plaintiffs seek "the Court's declaration that the Township cannot require or cause

---

[27]*See Downtown Auto Parks, Inc. v. City of Milwaukee,* 938 F.2d 705, 710-711 (7th Cir. 1991) (finding the expectation of the renewal of a lease for a parking garage with the City was not sufficient to implicate the due process notice requirement); *Scully v. United States,* 409 F.2d 1061, (10th Cir. 1969); *Stroh v. Alaska State Hous. Auth.,* 459 P.2d 480, 482 (Alaska 1969) ("a mere expectation, or even probability, that the lease will be renewed based upon past practice and present good relations between landlord and tenant, is not a legal right of renewal"); *State ex rel. Miller v. Gannett Outdoor Co. of Arizona, Inc.,* 795 P.2d 221, (Ari. App. 1990) (involving the lease for billboard, reviewing state and federal opinions on this issue and concluding, under Arizona law, "an expectation in the continuation of a lease is not a compensable property interest"); *San Diego Metro. Transit Dev. Bd. v. Handlery Hotel, Inc.,* 73 Cal. App. 4th 517, 531 (1999) ("A hypothetical future lease resting on the 'probability of renewal', unlike a contractual option to renew an existing lease, is not a compensable property right"); *Turner v. City of Kokomo,* 804 N.E.2d 272, (Ind. App. 2004); (finding no protected property interest in the expectation that a lease with an airport owned by the City would be renewed and therefore no violation of due process when the lessee was not given notice of the hearing where the board voted not to renew the lease); *Naegele Outdoor Adver. Co. of Minneapolis v. City of Lakeville,* 532 N.W.2d 249, 254 (Minn. App. 1995) ("The mere expectation of the lease's renewal is not a legal right and, thus, not compensable."); *Bagford v. Ephraim City,* 904 P.2d 1095, (Utah 1995) ("a mere expectation of a renewal of a lease is not a legal right that constitutes property subject to a 'taking'"); *Huntington v. Fraternity Snoqualimie, Inc.,* 86 Wash. App. 1093, 1997 WL 401593 at *3 (Wash. App. 1997) ("these previous renewals created an expectation that the leases would be renewed.  Expectations are not enforceable promises.")

[28]Plaintiffs allege the billboard in dispute is subject to the HAA because it is a "sign having a facing visible from more than 1 state highway or other public road."  MCL § 252.305.  *See* Plaintiffs' Brief in Support n. 10.  Defendant does not dispute this assertion.

[29]Defendant argues in its reply brief, even if no exhaustion requirement exists for § 1983 claims, the same is not true for pendant state claims.

[30]Defendant also argues CBS Outdoor does not own the billboard.  That argument has already been resolved against Defendant.

the removal of its billboard and extinguishment of its leasehold interest."[31]  (Dkt. No. 64 at 30).  Count III is brought only by Plaintiff CBS Outdoor and not by Plaintiff Disselkoen.

       1.  Jurisdiction.

On the record before this Court, there is a genuine issue of material fact as to whether the lack of an appeal undermines this Court's jurisdiction over Plaintiff CBS Outdoor's claim here.  As previously noted, this Court would have jurisdiction over the pendant law claim under 28 U.S.C. § 1367.  This Court has not been provided with a copy of the conditional variance.[32]  If the conditional variance simply granted a variance to the sign ordinance so that the Limited Partnership could receive a building permit, there was nothing for Gannett to appeal.  The authority cited by Defendant does not establish that any state court would have considered the claim ripe.  As explained above, Plaintiffs were not deprived of any property interest by the ZBA's decision.  The sign did not have to be removed until 2006, roughly seven years after the conditional variance was issued.

       2.  Highway Act

The Highway Beautification Act (Federal Act) requires federal highway funds appropriated to a state be reduced by ten percent if the state does not make "provision[s] for effective control of the erection and maintenance along the Interstate System and the primary system of outdoor advertising signs, displays, and devices."  23 U.S.C. § 131(b); *Lamar Adver. Co. v. Charter Township of Clinton*, 241 F. Supp.2d 793, 799 (E.D. Mich. 2003).  The Federal Act requires uniform federal standards for lighting, size, number and spacing of highway signs and other requirements as may be appropriate to implement effective control.  23 U.S.C. § 131©.  The Federal Act provides for just compensation for the removal of highway signs under certain conditions.

---

[31]In their Motion for Partial Summary Judgment, Plaintiffs request "partial summary judgment on Counts II through VI of its second amended complaint."  However, the brief in support of the motion does not address Count III.

[32]Defendant submitted a letter addressed to Mr. Julie Ford dated April 20, 1999 which "is notice of the Cascade Township Planning Commission decision to Approve your request for the construction of two additional mini-storage units."  (Exhibit 21).  The letter summarizes seven conditions which must be met before a building permit would be approved.  (*Id.*).  One of the conditions is that the applicant work with staff to determine a bond amount and to enter into a written agreement.  (*Id.*).

> Just compensation shall be paid upon the removal of any outdoor advertising sign, display, or device lawfully erected under State law and not permitted under subsection © of this section, whether or not removed pursuant to or because of this section.  The Federal share of such compensation shall be 75 per centum.  Such compensation shall be paid for the following:
>     (A) The taking from the owner of such sign, display, or device of all right, title, leasehold, and interest in such sign, display or device; and
>     (B) The taking from the owner of the real property on which the sign, display, or device is located, of the right to erect and maintain such signs, displays, and devices thereon.

23 U.S.C. § 131(g).

Michigan responded to the Federal Act by passing the Michigan Highway Advertising Act (HAA), MCL 252.301 *et seq*.  *Lamar*, 241 F. Supp.2d at 800.  The HAA authorizes a charter township to enact ordinances regulating the size, lighting and spacing of signs and sign structures. *See generally Township of Homer v. Billboards by Johnson, Inc.*, 708 N.W.2d 737 (Mich. App. 2006) (discussing the HAA in the context of preempting a local ordinance).  The HAA provides

> A city, village, township, or charter township may enact ordinances to regulate and control the size, lighting, and spacing of signs and sign structures but shall not permit a sign or sign structure that is otherwise prohibited by this act or require or cause the removal of lawfully erected signs or sign structures subject to this act without the payment of just compensation.

MCL § 252.304(a).  The statute acknowledges a local government unit's authority to cause or remove lawfully erected signs subject to certain limitations.[33]  A charter township may require or cause a lawfully erected billboard to be removed, so long as that authority is exercised as part of the municipality's ability to control the size, spacing and lighting of billboards and so long as just compensation is paid.  The state statute mirrors the just compensation provision of the Federal Act.

> (2) Each removal constitutes a taking and appropriation by the state of the following:
>  (a) From the owner of the sign or sign structure, all right, title, and interest in and to the sign or sign structure, and the owner's leasehold related thereto.
>  (b) From the owner of the real property on which the sign or sign structure is located immediately prior to its removal, the right to erect and maintain signs on that property, other than those described in section 13(1)(a), (b), and ©.

MCL § 252.322.  The Federal Act does not provide for a private right of action for just compensation.  *Lamar*,

---

[33]Neither the state nor the federal act defines "require" or "cause."  Causation, under Michigan tort law, is typically a question of fact decided by a jury.  *Sitta v. American Steel and Wire Division of United States Steel Corp.*, 254 F.2d 12, 17 (6th Cir. 1958); *Nichols v. Dobler*, 655 N.W.2d 787, 788 (Mich. App. 2002).

241 F. Supp.2d at 800.  The HAA, however, does allow for such an cause of action.  *Id.*

The district court in *Lamar* permanently enjoined defendant Township from removing a billboard or causing the removal of a billboard unless and until plaintiff was paid just compensation.  241 F. Supp.2d at 802. In that case, Dr. Turkal sought a building permit to expand his veterinary practice with an additional building and kennel.  On the property was a legal nonconforming billboard.  The permit was rejected because the proposed parking lot violated a set-back zoning ordinance.  Dr. Turkal applied for a variance to the set-back ordinance.  Defendant Township granted the variance on the condition that Dr. Turkal would have the billboard removed.  When the existing lease expired, Dr. Turkal renewed the billboard lease for another five years. Defendant Township then revoked the building permit and Dr. Turkal sued.  The parties resolved the suit through a consent judgment.

Defendant Township then sought to enforce the sign ordinance and variance against Plaintiff, the owner of the sign.  Plaintiff filed a complaint alleging a violation of its rights under the First Amendment and a violation of the HAA.  The district court found the threat of removal fell within the scope of the Federal Act and would be entitled to just compensation under the HAA upon removal of its sign.  *Lamar*, 241 F. Supp.2d at 800. The district court explicitly rejected the Township's claim that no compensation was required because Dr. Turkal consented to the removal of the billboard.  *Id.* at 801. The court concluded the Township was the cause of the removal.  *Id.*

*Lamar* was distinguished in another case involving the removal of billboards.  A state court of appeals in Minnesota, interpreting that state's equivalent of the HAA, found that the developer, not the local government entity, was the cause of the removal of a billboard and that the lessee of the billboard was not entitled to just compensation.  *St. Louis Park Post No. 5632 v. City of St. Louis Park*, 687 N.W.2d 405 (Minn. App. 2004).  The billboard at issue was located on a two story building.  Clear Channel had a five year lease on the billboard.  A development firm sought to purchase the building and also sought a conditional use permit to convert the facilities on the second floor to multitenant office space.  At the time of the application, the building did not conform to the local zoning ordinances several ways, including the billboard and the use of the property.  A city

ordinance provided, when any new use for a building which requires a conditional use permit for parts of a multitenant building, a permit may be issued so long as the nonconformities are brought into greater compliance to the extent possible.  The city issued a temporary conditional use permit on the provision that before any certificate of occupation was issued, a number of the nonconformities, including the billboard, must be phased out.  Clear Channel filed a declaratory action.  The court of appeals found Clear Channel was not entitled to just compensation for the termination of its lease because the city did not alter the lease, the developer did.  *St. Louis Park*, 687 N.W.2d at 408.  The court found the facts in *Lamar* distinguishable.  *Id.* at 408-409 (explaining that *Lamar* involved an informal policy and that the township imposed an unrelated condition on the variance).  The court also found that Clear Channel had remedies under contract law against the developer.  *Id.* at 409.

Plaintiff CBS Outdoor has the better argument here.  Neither the federal nor the state act supports the related/unrelated distinction made in *Lamar* and *St. Louis Park*.  Furthermore, that distinction unnecessarily complicates the issue.  The Federal Act requires just compensation upon removal of a sign lawfully erected under state law and not permitted by the Act, "whether or not removed pursuant to or because of this section." 23 U.S.C. § 131(g).  Plainly read, the Federal Act does not support the related/unrelated distinction because just compensation is owed when a government entity causes a sign that is not permitted by the Act to be removed, regardless of whether removal is made because of the Act or some other government policy.  The HAA authorizes local authorities to enact ordinances regulating billboards, "but shall not permit a sign or sign structure that is otherwise prohibited by this act or require or cause the removal of lawfully erected signs or sign structures subject to this act without the payment of just compensation."  MCL § 252.304(a).  The HAA does not support the related/unrelated distinction either as just compensation is owed when a government entity causes the removal of a lawfully erected sign or requires the removal of a lawfully erected sign.

The critical question under both statutes is whether the government or some other entity is requiring or causing the removal.  Had Mr. Barnett opted not to renew the lease in 1991 he could have required Gannett to remove the sign and Gannett would not be owed any compensation.  The same was true in 2006 when the Gannett lease expired.  However, those are not the facts here.  Defendant enacted a sign ordinance which, under

27

§ 7.02, a legal nonconforming billboard loses its legal nonconforming status upon the issuance of certain building permits.  Certainly no person who has a billboard on his or her property is forced to ask for a building permit.  But, when that person seeks a building permit, Defendant uses the sign ordinance to cause the removal of the billboard as a condition of granting the permit.

This Court is persuaded that when a government entity issues a building permit conditioned upon the removal of a lawfully erected, but legally nonconforming sign, the government entity is requiring or causing the removal of the sign.  The court in *St. Louis Park* and Defendant focus on the fact that the property owner did not have to request the building permit to conclude that the owner's voluntary act undermines any causation attributable to the government.  This Court respectfully disagrees with that interpretation.  The state has an interest in removing nonconforming uses and in minimizing the harms caused by billboards.  The HAA permits local government units to enact regulations and ordinances to further those interests, with the provision that if a billboard is removed because of the regulation or ordinance, just compensation is owed regardless of how or why the government causes the sign to be removed.  Having imposed the condition of removing the sign in exchange for granting the building permit, Defendant cannot successfully argue it was not responsible for having the sign removed.  Neither can Defendant hide its actions behind a private agreement designed to enforce the condition of the permit, or in this case, the variance.[34]  Using a private agreement like the ARV to have a private entity remove the billboard does not change the fact that the requirement is imposed by a government entity.  Should the private entity refuse to uphold its end of the contract, the government entity would be forced to sue to enforce the contract, revealing that it is the cause of the removal.

The remaining question then is whether any compensation is owed.  Plaintiff CBS Outdoor has a claim for the removal of its billboard, assuming it owns the billboard.  Plaintiff CBS Outdoor is not owed compensation for any loss of the 1991-2006 lease as that lease was allowed to expire on its own terms.  It is not owed any compensation for its expectation that the lease would be renewed because this Court already

---

[34]This conclusion does not imply that a government entity would necessarily be prohibited from shifting any compensation owned to another party.

concluded that is not a compensable property right.  Plaintiff CBS does not have a claim against defendant Township for the loss of the ten year leasehold it signed after the 1991-2006 leasehold expired.[35]  Assuming the variance and the ARV are enforceable, the owners of the property and the easement cannot lease the space for the billboard.

This Court concludes Defendant is not entitled to summary judgment on Count III because Defendant caused or required the billboard to be removed.  Plaintiff CBS Outdoor is not entitled to a declaration that the HAA does not authorize Defendant to cause or require billboards subject to the Act to be removed.

E.  COUNT IV - Violation of the Michigan Zoning Enabling Act

Both Plaintiffs request summary judgment on Count IV.  Plaintiffs argue the ARV exceeds Defendant's authority to regulate nonconforming uses.  Plaintiffs assert the Zoning Enabling Act authorizes only the purchase, condemnation or the acquisition of private property for the removal of nonconforming uses.  Plaintiffs assert that Defendant can only cause the removal of billboards through condemnation or acquisition, relying on the authority found in the Zoning Enabling Act, MCL § 125.3101, *et seq.*[36]  Plaintiffs argue Defendant's actions exceed the authority granted by the Legislature because Defendant has not condemned or acquired the billboard, the property or the leasehold.  Plaintiffs argue the HAA only authorizes regulations of the size, spacing and lighting of billboards.  Plaintiffs conclude Defendant has no authority to regulate billboards outside of its ability to zone.  Defendant alleges, in response, charter townships have broad police powers under MCL § 42.15.

Defendant also requests summary judgment on Count IV.  Defendant argues the claim has no legal basis because the variance was granted under the sign ordinance and not under a zoning ordinance.  Defendant argues the sign ordinance is authorized by the HAA.[37]  Defendant contends the authority identified by Plaintiffs do not

---

[35]Plaintiff CBS Outdoor and Randy Disselkoen, individually, entered into a ten year lease for the easement in May 2007.  (Exhibit A to Plaintiffs' Reply Brief in Support of its Motion).

[36]The Michigan Zoning Enabling Act became effective July 1, 2006.  2006 Mich. Pub. Acts No. 110.  It repealed and replaced the Michigan Township Zoning Act, MCL § 125.271, *et seq.*  Plaintiffs have generally alleged the same outcome under either of the Zoning Acts.

[37]Defendant also argues this Court does not have jurisdiction over the claim.  That argument has already been resolved against Defendant under Count III.

implicate its ability to enter into a contract and therefore the claim cannot impact the ARV.

As explained above, the HAA broadly authorizes a charter township to regulate the size, spacing and lighting of billboards. MCL 252.304(a). That same provision authorizes the removal of lawfully erected billboards when those billboards are "subject to this act" so long as just compensation is paid. *Id.* Unlike the Zoning Enabling Act, the HAA does not require a township to condemn or purchase the billboard in order to cause its removal.[38] The HAA further acknowledges that charter townships are vested with the authority to enact zoning ordinances which "shall be accepted for the purposes of this act." MCL § 252.304(b). However, a zoning ordinance which is not part of "a comprehensive zoning plan and is taken primarily for purposes of this act" shall not be accepted. *Id.*

Defendant's sign ordinance was authorized by the HAA and not by the relevant state zoning act. The sign ordinance does generally regulate signs by zoning district, rather it limits the lighting, size and spacing of signs within a particular district. *See* Sign Ordinance, Chapter 6. There is no evidence, and no party has suggested, that the zoning districts were created for the purpose of regulating signs. Finally, to the extent that the HAA and the Zoning Enabling Act conflict, the more specific provision, in this case the HAA's specific authority to regulate the size and spacing of billboards, shall prevail. *Dingeman Adver., Inc. v. Township of Saginaw*, 285 N.W.2d 440, 442-443 (Mich. App. 1979).

Plaintiffs are not entitled to summary judgment on Count IV. Defendant has not exceeded its authority to require or cause the sign to be removed. The sign's legal nonconforming status is the result of the sign ordinance, not a zoning ordinance. The HAA broadly permits such an action, on the provision that just compensation is paid. The sign ordinance was enacted under the authority of the HAA. The HAA recognizes the township's authority to enact zoning ordinances and includes a provision that the two may overlap so long as the sign ordinances are not used as a tool for zoning. The ARV does not exceed Defendant's authority.

---

[38]The district court in *Lamar* implicitly reached a similar conclusion. There, the municipality argued the property owner waived the sign owner's claim to just compensation because the property owner consented to the removal of the sign, relying on an eminent domain case. The district court rejected the argument explaining that use of the phrase "just compensation" in the HAA did not make plaintiff's allegation a takings claim *See Lamar*, 241 F. Supp.2d at 801 n. 5.

30

Plaintiffs assert, in their response brief, that Defendant cannot condition a zoning authorization upon entering a contract to perform some act, citing *Arrowhead Dev. Co. v. Livingston County Road Comm'n*, 322 N.W.2d 702 (Mich 1982).  The opinion in *Arrowhead* does not support Plaintiffs' position.  In that case, a County Road Commission required, as a condition precedent to the approval of a plat, that the developer regrade and resurface a county road next to, but not in, the plat.  The Michigan Supreme Court found no authority in the County Road Law or the Michigan Subdivision Control Act authorizing the Commission to shift the cost of maintaining county roads to developers.  *Id.* at 706-709.  The Court concluded the Road Commission exceeded its limited statutory powers.  *Id.* at 709.  This Court has already concluded Defendant had the authority to cause the billboard to be removed.

Plaintiffs also argue the Michigan Supreme Court has recognized two sources of authority for home rule cities to regulate signs: the Zoning Enabling Act and the Home Rule City Act.  Plaintiffs cite *Adams Outdoor Advertising, Inc. v. City of Holland*, 625 N.W.2d 377 (Mich. 2001) and *Adams Outdoor Advertising v. East Lansing*, 483 N.W.2d 38 (Mich. 1992).  In the *City of Holland* case, the issue was whether Holland's zoning ordinance was invalid under either the Home Rule City Act or the City and Village Zoning Act.  625 N.W.2d at 379.  The plaintiff alleged the ordinance exceeded the City's zoning authority because it completely banned billboards.  The Michigan Supreme Court found that the plaintiff failed to establish that the ordinance completely banned billboards and concluded the zoning ordinance was authorized by the City and Village Zoning Act because there was no exclusionary zoning.  *Id.* at 382-383.  The issue in *East Lansing* was whether a sign ordinance which eliminates nonconforming billboards over time was authorized by any statutory authority.  483 N.W.2d at 39.  The Michigan Supreme Court found the Home Rule City Act authorized such an amortization of nonconforming uses even though the Zoning Enabling Act did not.  *Id.* at 41.

The cases cited by Plaintiffs do not support conclusion that Defendant does not have authority outside its zoning power to regulate billboards.  Neither opinion addressed the HAA.  Neither opinion concluded that a municipality's authority to enact a sign ordinance must necessarily arise under its zoning authority.  The facts in

both cases are also distinct from the facts here.

Defendant is entitled to summary judgment on Count IV.  Defendant's sign ordinance is authorized by the HAA, not the Zoning Enabling Act.  Defendant has not exceeded its authority under the HAA.  The portions of the sign ordinance which make this billboard nonconforming are the size and spacing limitations.  The HAA authorizes the removal of such a sign upon the payment of just compensation.

F.  COUNT V - Declaration that the ARV is unlawful (wrong party)

Both Plaintiffs request summary judgment on Count V.  Plaintiffs point to two problems which they contend undermine the ability to enforce the ARV.  First, Plaintiffs contend the wrong party signed the ARV.  The Family Trust had no interest in the property when it petitioned the ZBA for a variance or when it agreed to the conditions contained in the ARV.  Second, Plaintiffs argue the property on which the billboard is located is now owned by the Road Commission, who is exempt from zoning regulations.  Defendant also requests summary judgment on Count V.  Defendant argues (1) the conditional variance is valid and enforceable, (2) Defendant entered into the ARV with the owner of the property,[39] (3) the owner of the property should be equitably estopped from challenging the enforcement of the ARV, and (4) the Road Commission's ownership does not prevent enforcement of the ARV.  Plaintiffs respond that they cannot be estopped from challenging the validity of the ARV because neither own the property and are not a party to the contract or a successor in interest.

1.  Ownership and Estoppel

"Equitable estoppel arises when one party, by its representations, admissions, or silence, intentionally or negligently, induces another party to believe facts, the other party justifiably relies and acts on this belief, and will be prejudiced if the first party is permitted to deny the existence of those facts."  *Hoye v. Westfield Ins. Co.*, 487 N.W.2d 838, 842 (Mich. App. 1992) (quoting *Southeastern Oakland County Incineratory Auth. v. Dep't of*

---

[39]Defendant asserts Mr. Barnett was an authorized agent of the Family Trust.  Given that the Family Trust may not exist, this claim does not help Defendant.  Defendant also alleges the use of the phrase "Family Trust" is merely a misnomer.  Due to the number of entities to which the misnomer might be referring, this claim also does not help Defendant.

*Natural Res.*, 440 N.W.2d 649, 653-654 (1989)).  A party who accepts and retains an advantage of a variance

granted upon a condition will be estopped from attacking the propriety of the condition and will be deemed to

have waived any error.  *Aslanian*, 428 N.W.2d at 705.

Although the application was submitted on behalf of the Family Trust rather than the Limited

Partnership, the Limited Partnership received the benefit of the conditional variance.  The same is true of the

ARV.  The Limited Partnership was well aware of the conditional variance and the ARV.  Mr. Barnett was a

central figure in the Limited Partnership, the application for the variance, the ARV, the lease for the billboard,

and the storage facility company doing business on the property.  As a result of the conditional variance, the

Limited Partnership was able to expand the storage facility operation on the property and collect revenue from

that operation for several years before selling the property.  The Limited Partnership is thus estopped from

challenging the validity of the conditional variance and the ARV.  Because the Limited Partnership accepted the

benefit of the condition variance and the ARV, it ratified the otherwise voidable contract.  The ARV contained a

provision that the agreement would run with the land and bind future owners of the property as well as

successors, assigns and transferees.  *Cf. Paragon Properties Co. v. City of Novi*, 550 N.W.2d 772, 774 (Mich.

1996) (noting that variances typically run with the land).  Therefore, both the ARV and the variance prohibits

owners of the real property after the Limited Partnership from leasing the land for the purpose of a billboard.

Any easement on the land would similarly be limited by the conditions of the ARV and the variance.  *City of*

*East Lansing*, 614 N.W.2d at 638 (noting that a lessor can transfer no greater rights than he or she possesses).

2.  Application of the Ordinance to the Road Commission

Plaintiffs contend the Road Commission owns the property on which the billboard is located and that

the Road Commission is exempt from the ordinance.  Plaintiffs conclude the condition of removing the sign

contained the variance and the ARV cannot be enforced.  Defendant counters the Road Commission acquired

the property with a condition that runs with the land.

Legislative intent determines whether a governmental unit is immune from local zoning ordinances.

*City of Detroit v. State of Michigan*, 686 N.W.2d 514, 518 (Mich. App. 2004) (per curiam).  *See Pittsfield Charter Township v. Washtenaw County*, 664 N.W.2d 193, 197 (Mich. 2003) (finding the County Commissioners Act authorizing a county to select the location of a county building made the county's building immune from local zoning ordinances enacted under the Township Zoning Act).  The Legislature need not use any particular "talismanic words" to indicate its intent, it must merely "convey its clear intention that the grant of jurisdiction given is, in fact, exclusive." *Township of Burt v. Dep't of Natural Res.*, 593 N.W.2d 534, 538 (Mich. 1999).

The County Road Law, MCL 224.1 *et seq.*, authorizes the adoption of a county road system and the creation of Boards of County Road Commissions.  County Road Commissions may hold title to land acquired in a manner authorized by law and may also sell land it owns when that land is not part of a public street, highway or park or is not required for use as a public street, highway or park.  MCL § 224.9(3).  County Road Commissions have broad authority over roads, bridges and culverts under its control.  MCL § 224.19(1).  Easements give the holder a right to some profit or use of the land, but do not displace the general possession of the owner of the land.  *Morrill v. Mackman*, 24 Mich 279 (1872).  *See Hart v. Ward*, 2003 WL 23850188 (Mich. App. Oct. 26, 2003) (unpublished opinion per curiam) (explaining that an easement is not an estate in land, but merely a right to use the land).

Plaintiffs are not entitled to summary judgment on the basis that the Road Commission owns the land on which the billboard is located.  First, when the land was acquired by the Commission, it had a variance that ran with land.  Neither party has offered any authority implying that the acquisition of land by a subsequent party, even a governmental unit, nullifies a condition that runs with the land.  Second, the County Road Law does not contain clear legislative intent that all land owned by Road Commissions are immune from local zoning ordinances.  Assume, only for the sake of argument, that when the Legislature granted Road Commissions broad authority over roads, bridges and culverts, it intended those Road Commission properties to be free from local zoning ordinances.  That assumption does not establish that *all* lands owned by Road Commissions are immune from local ordinances.  Plaintiffs have not established that the sign in dispute is located on land which

34

constitutes a road, bridge or culvert.  In fact, the record does not establish where the sign is located in relation to the new

road.[40]  Accordingly, Plaintiffs are not entitled to summary judgment as they have not established the lack of a genuine issue of material fact sufficient to require a response from Defendant.

Defendant, however, is entitled to summary judgment on Count V.  The ARV was enforceable against the Limited Partnership when it owned the property.  The conditions in the ARV are binding on the successors and assigns of the Limited Partnership's real property.  Plaintiffs may be correct that because neither of them own the property, they are not estopped from challenging the conditions in the ARV.  However, Plaintiffs have not established that the ARV is unenforceable.  Defendant is correct that it may enforce the conditions of the ARV upon the current owners of the real property upon which the billboard is located.

F.  COUNT VI - Declaration that the ARV is Unlawful (Failure of the Underlying Purpose).

Both Plaintiffs request summary judgment on Count VI.  Plaintiffs allege the current owner of the property did not receive any benefit from the variance.  Plaintiffs further contend that the Road Commission razed the buildings after it purchased the property from the Limited Partnership and therefore the underlying purpose of the variance no longer exists.  Defendant also requests summary judgment on Count VI.  Defendant contends the ARV requires removal of the billboard regardless of whether the buildings for which the conditional variance was granted exist or not.  Defendant also argues the Limited Partnership received a benefit from those buildings for several years before selling the property at a cost that reflected the existence of the additional buildings.

Defendant is entitled to summary judgment on Count VI.  Plaintiffs are not.  The Limited Partnership reaped the benefit of the conditional variance, ratifying the ARV and is now estopped from challenging that condition.  The Limited Partnership's successors in interest are also estopped from challenging the condition as the ARV binds transferees and assigns.  The owner of the billboard is not a successor in interest and is not

_____

[40]It would be safe to assume the billboard is not located *on* the new road.

estopped from challenging either the ARV.  However, Plaintiff CBS Outdoor, the owner of the billboard, has

not offered any legal authority that the ARV should be deemed unenforceable in this situation.  Plaintiff CBS

Outdoors offers legal authority for the proposition that a party who receives a benefit from a variance cannot

later challenge the variance.  Nothing from that proposition implies, infers or suggests the ARV is not

enforceable. Neither Plaintiff has offered any authority to support its claim that when the underlying purpose of

a variance is eliminate, the condition upon which that variance was granted is no longer enforceable.  Neither

Plaintiff has offered any authority suggesting that when the purpose of a variance is undermined, any private

agreement related to that variance is unenforceable.[41]

## IV.  CONCLUSION

Plaintiffs' motion for partial summary judgment is denied.  Neither Plaintiff requested summary

judgment on Counts I or III.  Plaintiff CBS Outdoor requests summary judgment on Count II, the claim for a

violation of procedural due process.  CBS Outdoor is not entitled to summary judgment on Count II because the

1999 hearing for the variance to the sign ordinance did not result in a decision in which Defendant deprived

CBS Outdoor of any property interest.  Both Plaintiffs request summary judgment on Count IV, the claim for a

violation of the Michigan Zoning Enabling Act.  Neither Plaintiff is entitled to summary judgment on Count IV

because the authority to cause or require the removal of the billboard is not located in the Zoning Enabling Act

and Defendant does have authority under the Highway Advertising Act to cause or required the removal of the

billboard.  Both Plaintiffs request summary judgment on Count V and VI, the requests to declare the Agreement

Regarding Variance an unlawful agreement.  Plaintiffs are not entitled to summary judgment on Count V

because the agreement was ratified by the acts of the Limited Partnership and because Plaintiffs have not

established that Legislature provided clear intent to immunize all of the property a Road Commission holds from

---

[41]This Court does not construe the existence of the buildings a condition precedent to the
requirement that property not be leased for a billboard and the billboard removed.  In Michigan,
conditions precedent are disfavored and courts should avoid interpreting contractual provisions as
conditions precedent unless clearly indicated to do so by the language of the document. *MacDonald v.
Perry,* 70 N.W.2d 721, 725 (Mich. 1955); *Mikoncyzk v. Detroit Newspapers, Inc.*, 605 N.W.2d 360, 363
(Mich. App. 1999).

local zoning ordinances.  Plaintiffs are not entitled to summary judgment on Count VI because they have offered no authority to support their assertion that when the underlying purpose of a variance has been demolished, a private agreement executed as a condition upon which the variance was granted is unenforceable.

Defendant's cross motion for summary judgment is granted in part and denied in part.  Defendant requested summary judgment on all six counts of the amended complaint.  Defendant also requested summary judgment on the issue of standing.  Defendant is not entitled to summary judgment on the issue of standing. Plaintiff CBS Outdoor has provided sufficient evidence establishing its ownership of the billboard.  Plaintiff Disselkoen LLC has provided sufficient evidence establishing its rights to the easement where the billboard is located.  Defendant is entitled to summary judgment on Count I, the claim for violation of CBS Outdoor's First Amendment rights.  This Court has jurisdiction over this claim as it is brought under section 1983.  The sign ordinance and Defendant's actions are content neutral, serve a significant government purpose, are narrowly tailored to meet that purpose, and leave open ample channels of communication.  The ordinance and Defendant's action also meet the four part test for regulation of commercial speech.  The agreement is not an invalid restriction on free expression.

Defendant is also entitled to summary judgment on Count II, the claim for a violation of Plaintiff CBS Outdoor's right to procedural due process.  Defendant did not deprive CBS of any property right as a result of the conditional variance granted in 1999 regarding this sign and the easement.

Defendant is not entitled to summary judgment on Count III, the claim for a violation of CBS Outdoor's rights under the Michigan Highway Advertising Act.  There is a genuine issue of material fact whether this Court has jurisdiction over the claim.  A plain reading of both the federal and state acts require just compensation to a sign owner when a local government authority causes the sign to be removed through a conditioned variance or a private agreement.

Defendant is entitled to summary judgment on Count IV, the claim by both Plaintiffs that Defendant's actions exceed its authority under the Zoning Enabling Act.  Defendant has established the sign ordinance, its actions and the agreement are all authorized by the authority granted to it under the Michigan Highway Act and

not any zoning statute.

Defendant is entitled to summary judgment on Counts V and VI, the declaratory actions. Defendant has established the agreement is enforceable.

ORDER

Plaintiffs' Motion for Partial Summary Judgment (Dkt. No. 53) is **DENIED.**  Defendant's  Cross Motion for Summary Judgment is **GRANTED IN PART and DENIED IN PART.**  Defendant is not entitled to summary judgment on standing, jurisdiction or Count III.  Defendant is entitled to summary judgment on Count I, II, IV, V, and VI.  **IT IS SO ORDERED.**

Date:   January 9, 2008                                  /s/ Paul L. Maloney
                                                         Paul L. Maloney
                                                         United States District Judge